# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

**CHILDREN'S MEDICAL GROUP, INC.,**
    Plaintiff,

    v.                                                    Case No. 17-CV-1250

**LAKE COUNTY PEDIATRICS, S.C.,**
    Defendant.

_____

## ORDER

Plaintiff Children's Medical Group, Inc., d/b/a "Children's Hospital of Wisconsin" ("CHW"), brought this action seeking a declaratory judgment that CHW's use of the phrase "Delafield Pediatrics" to identify its primary care practice in Delafield, Wisconsin, does not constitute trademark infringement or unfair competition under the Lanham Act or Wisconsin common law. Defendant Lake Country Pediatrics (LCP) filed a counterclaim alleging claims for false designation of origin in violation of Section 43(a) of the Lanham Act, common law unfair competition and common law trademark infringement. The action is before me on the parties' cross motions for summary judgment.

## I. BACKGROUND

In July 1998, Dr. Mark Kamsler established Delafield Pediatrics, S.C., a pediatric medical clinic located in Delafield, Wisconsin. ECF # 134, ¶ 81. The clinic offered its patients an "integrated approach to health care," including "the use where appropriate of supplements, herbals, tinctures, teas, essential oils, massage, probiotics and educational services," and a "willingness to work with patients who had concerns about vaccines." ECF # 129-1, ¶¶ 27-30. The clinic's integrated approach to pediatric

1

health care attracted patients from across the State of Wisconsin, and from Illinois. *Id.*, ¶ 30. The clinic used the name Delafield Pediatrics to identify itself in the phone directory, on medical forms, and on letterhead. *Id.*, ¶ 21. Kamsler also relied on word of mouth advertising to promote the Delafield Pediatrics Clinic. *Id.*, ¶ 24-25.

In 2010, Dr. Kamsler sold the practice to LCP. Dr. Gregory Moyer had founded LCP in 1997 in Oconomowoc, Wisconsin, which is close to Delafield, and continued to operate a clinic there. *Id.*, ¶ 38. The asset purchase agreement specified that Moyer and Kamsler intended that rights to the name Delafield Pediatrics would transfer to LCP as part of the purchase; the parties dispute whether Kamsler in fact owned any such rights and whether the asset purchase agreement constituted valid transfer. After the purchase, LCP continued to offer integrative health care services at the same location in Delafield previously used by Dr. Kamsler and Delafield Pediatrics. *Id.*, ¶ 51. In December 2010, LCP announced its purchase of the Delafield Pediatrics medical practice in an advertisement published in a local parenting magazine. *Id.*, ¶ 49. LCP also sent a letter to all patients of Delafield Pediatrics advising them of the purchase and of Dr. Kamsler's ongoing availability as a physician associated with LCP. *Id.,* ¶ 51. Many patients of Dr. Kamsler and Delafield Pediatrics remained patients of the clinic after it was purchased by LCP. *Id.*, ¶ 52.

The parties dispute the extent to which LCP used the phrase "Delafield Pediatrics" to identify or advertise the Delafield clinic following the purchase. LCP contends that it continued to use the phrase "Delafield Pediatrics" to describe the clinic, but provides little evidence for that assertion. The sign outside the building reads "Lake Country Pediatrics," not "Delafield Pediatrics"; LCP contends that this is because it already owned the Lake Country Pediatrics sign and it would be too expensive to

purchase a new sign. ECF # 91, ¶ 45. LCP also acknowledges that newspaper ads it published after the purchase did not use the phrase "Delafield Pediatrics," but rather referred to the clinic as LCP's "Delafield Location," comparable to its "Oconomowoc Location." *Id.*, ¶ 48. In his deposition, Dr. Moyer stated that "Delafield Pediatrics didn't advertise much at all until Children's came into the picture" in 2014, and that before that time word of mouth had been its primary mechanism for advertising. ECF # 127-16 at *32-33. CHW has submitted as exhibits many examples of LCP print ads that provide contact and address information for the Delafield location without using the phrase "Delafield Pediatrics." LCP has also submitted some examples of print ads that do contain the phrase "Delafield Pediatrics," but does not specify the date of publication of these ads. ECF # 91-3. As for online advertising, an employee of LCP's marketing and advertising agency testified that she first created a "Delafield Pediatrics" page for the LCP website in 2017; before then, the website had referred only to a "Delafield Location" and an "Oconomowoc Location". ECF # 127-49 at *22. LCP's "Delafield Pediatrics" Facebook page was also created in 2017. ECF # 127-35. LCP contends that its employees continued to answer the phone using the phrase "Delafield Pediatrics" and it is undisputed that the phrase "Delafield Pediatrics" was used in word-of-mouth advertising.

CHW is a large provider of pediatric medical services comprising two hospitals and several clinics, including primary care clinics, located throughout southeastern Wisconsin. Many (though not all) of its primary care clinics have names that pair the word "pediatrics" with the name of the community or neighborhood in which the clinic is located. For example, CHW operates Oak Creek Pediatrics in the city of Oak Creek,

3

Kenosha Pediatrics in the city of Kenosha, and North Shore Pediatrics in the North Shore suburbs of Milwaukee.

In 2014, CHW began construction of a new clinic in Delafield. ECF# 129-1, ¶ 78. Since the clinic opened, the outside signage has stated "Children's Hospital of Wisconsin Delafield Clinic." *Id.*, ¶ 80. However, CHW also uses the name "Delafield Pediatrics" in marketing the services offered at the facility. The parties dispute the nature of this use: LCP claims that the name "Delafield Pediatrics" is used to market all services at the clinic, whereas CHW claims that the name is used only to describe and promote the primary care office located within the clinic, which also contains several offices that offer various sorts of pediatric specialty care. *Id.*, ¶¶ 86-87.

In the spring of 2017, Dr. Moyer contacted CHW regarding CHW's use of the name Delafield Pediatrics; the parties dispute the nature of the communications that ensued, but they concluded with the filing of this lawsuit.

## II. LEGAL STANDARDS

*a. Summary Judgment*

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

When the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury

verdict. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker,* 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and must set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 248.

   *b. Trademark Infringement and Unfair Competition*

LCP moves for summary judgment on its statutory and common law claims of trademark infringement and unfair competition. CHW moves for summary judgment on its action for declaratory judgment that its use of the "Delafield Pediatrics" name does not constitute trademark infringement or unfair competition.

To prevail on a trademark infringement claim under either the Lanham Act or the common law, LCP must establish (1) that it owns a protectable trademark, and (2) that a likelihood of confusion exists between its use and CHW's use of the mark. *Meridian Mut. Ins. Co. v. Meridian Ins. Group,* 128 F.3d 1111, 1115 (7th Cir. 1997). The analysis is essentially the same for unfair competition under the Lanham Act and under the common law. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001)(to establish unfair competition, a plaintiff must establish that (1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers); *Echo Travel, Inc. v. Travel Assocs., Inc.,* 870 F.2d 1264, 1266 (7th Cir. 1989)(to establish common law unfair competition, a plaintiff must prove (1) validity of the mark in question; and (2) infringement). However, "a court doesn't even reach the question of likelihood of confusion until persuaded that the putative mark is sufficiently distinctive to warrant prima facie protection as a trademark." *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 610 (7th Cir. 1986).

A mark is only entitled to protection under trademark law when "that mark specifically identifies and distinguishes one company's goods and services from those of its competitors." *Platinum Home Mortgage Corp. v. Platinum Financial Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). When, as here, the mark is not registered with the United States Patent and Trademark Office, the burden is on the claimant to establish that it is entitled to protection. *Id.* at 727.

Marks are classified into five categories of generally increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). The level of protection afforded to a mark depends on where it falls on the spectrum of distinctiveness. *Id.* Generic marks are the least distinctive category; they are commonly used, do not identify any particular source, and are not entitled to any trademark protection. *Platinum Home*, 149 F. 3d at 727. Further along the spectrum of distinctiveness, descriptive marks describe "the ingredients, qualities, or characteristics of an article of trade or service." *Id.* Descriptive marks do not receive trademark protection unless the mark "acquires secondary meaning in the collective consciousness of the relevant community." *Id.* (internal citations omitted). "A descriptive mark acquires secondary meaning when it has been used so long and so exclusively by one company in association with its products or services in that particular industry that the word, term, name, symbol or device has come to mean that those products or services are that company's trademark." *Platinum Home,* 149 F.3d at 728.

Secondary meaning can be established through direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, place in the market, and proof of intentional copying. *Spraying Systems Co. v. Delavan, Inc.*,

975 F.2d 387, 393 (7th Cir. 1992). These factors are relevant because they provide insight as to how the consuming public regards the mark in question. *Gimix, Inc. v. JS & A Grp., Inc.*, 699 F.2d 901, 907 (7th Cir. 1983). Further, "[s]econdary meaning is a time-related concept: it exists at a specific time, in a specific place, among a specific group of people who recognize that specified matter indicates commercial origin of a specified type of product or service from one unique commercial source." 4A Callman on Unfair Competition, Trademarks and Monopolies § 20.23 (4th ed. 2017)(cited in *Royal Crown Company, Inc. v. The Coca-Cola Company*, 892 F.3d 1358, 1371 (Fed. Cir. 2018). Therefore, evidence of consumer perceptions is only probative "if it deals with conditions at the appropriate time." *Id.*

### III. ANALYSIS

The parties dispute whether the phrase "Delafield Pediatrics" as used by LCP is generic (and thus not entitled to protection) or descriptive (and thus entitled to protection only if it has acquired secondary meaning). I need not resolve the question, because, even if the phrase is descriptive, LCP has not presented evidence sufficient to support a finding that the phrase "Delafield Pediatrics" has acquired secondary meaning and is entitled to trademark protection. LCP's secondary meaning argument fails because LCP has not presented sufficient evidence of consumer perception in 2014, i.e. at the time CHW opened its clinic in Delafield and began using the name Delafield Pediatrics to identify the clinic's primary care practice.

For example, to establish secondary meaning through length and manner of use, LCP must present evidence that it was actively using the Delafield Pediatrics mark when CHW opened its Delafield Clinic. "To establish ownership of a mark, the prior user

7

must establish not only that at some date in the past it used the mark, but that such use has continued to the present." 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 16.9 (5th ed. 2019). *See also Converse, Inc. v. International Trade Commission Skechers U.S.A., Inc.*, 909 F.3d 1110, 1120 (Fed. Cir. 2018) ("The secondary meaning analysis primarily seeks to determine what is in the mind of consumers as of the relevant date, and [the use factor] must be applied with this purpose in view. The most relevant evidence will be the trademark owner's and third parties use in the recent period before first use or infringement."). But LCP has only meager evidence of active use of the Delafield Pediatrics mark in 2014 and immediately before. LCP points to a letter that it sent to patients in 2010 announcing its purchase of the Delafield Pediatrics practice. It also published a magazine advertisement and a Facebook announcement with information about the purchase at roughly the same time. But following that brief flurry of announcements in 2010, LCP provides no hard evidence that it used the Delafield Pediatrics mark at all, except to assert that patients used the name in word-of-mouth advertising and that staff used the name when they answered the phone. The next documentary evidence of LCP's use of the phrase "Delafield Pediatrics" is a print advertisement published in 2017, after LCP had become aware that CHW was using the name Delafield Pediatrics to identify the primary care practice at its Delafield clinic. Thus, LCP presents evidence of only minimal and inconsistent use of the Delafield Pediatrics mark following its purchase of the practice, and such minimal use is not sufficient to "alert any significant number of consumers that [Delafield Pediatrics] had a definite referent." *Custom Vehicles, Inc. v. Forest River, Inc.* 476 F.3d 481, 485 (7th Cir. 2007).

LCP also presents no evidence that it was using the Delafield Pediatrics mark in advertising at the time CHW opened its Delafield clinic. Indeed, other than the advertisements mentioned above announcing the purchase of the Delafield Pediatrics practice in 2010, LCP has not presented a single example of a print or online advertisement between 2010 and 2017 in which it uses the phrase "Delafield Pediatrics." Instead, the advertisements from that time period use the house mark "Lake Country Pediatrics" and provide location and contact information for a Delafield clinic and an Oconomowoc clinic. LCP argues that this was merely an error which it failed to catch and correct because it is a lean organization with no marketing staff. ECF # 133 at 10. But advertising is relevant to secondary meaning for what it reveals, albeit circumstantially, about how the consuming public perceives the mark. *Gimix*, 699 F.2d at 907. The only advertising evidence LCP presents that explicitly draws a connection between the Delafield Pediatrics mark and LCP's services dates from 2017 or later—after CHW had entered the market and begun using the Delafield pediatrics name. This post-2017 advertising does not support an inference that, in 2014, "Delafield Pediatrics" was established in the minds of the public through advertising as LCP's exclusive mark.

In support of its secondary meaning argument, LCP also presents declarations of parents of LCP patients who associate the Delafield Pediatrics mark with integrative medical care. These declarations also have very limited probative value as to public perception of the Delafield Pediatrics name at the time CHW entered the market. Dr. Moyer testified at his deposition that his team recruited these particular parents of patients to give declarations because they "were patients of Delafield Pediatrics during the Kamsler era and are continued patients now that are still part of the whole umbrella, Lake Country Pediatrics team." ECF # 127-16 at *45. Thus, these parents of patients

formed their association between the phrase "Delafield Pediatrics" and integrative care in 2010 or before, when Dr. Kamsler was running the business under that name, and not during the time period that Lake Country Pediatrics was operating the clinic. Moyer also testified that "a lot of the patients" who had been patients of Dr. Kamsler had "aged out" of pediatric care. *Id.* This suggests that patients who had remained with the practice since the time of Dr. Kamsler are rather uniquely positioned with respect to their perception of the Delafield Pediatrics name, and not representative of current pediatric care consumers in the relevant geographic market as a whole. Testimony of consumers who formed their perception of the Delafield Pediatrics name in 2010 or before, when the name was the primary business name of Dr. Kamsler's clinic, reveals little about general public perception of the name in 2014, especially given LCP's minimal use of the name following its purchase of the practice in 2010. *See Royal Crown*, 892 F.3d at 1371 (five-year-old consumer survey had little value in proving contemporary public perception, especially given substantial third-party use of the mark in question in the intervening years).

LCP also argues that current and former employees of LCP and CHW associate the phrase "Delafield Pediatrics" with integrative medical care. The testimony of these medical professionals is of very limited value for establishing secondary meaning, as it is not probative of a strong connection in the mind of the *consuming public* between the phrase "Delafield Pediatrics" and integrative medical care. *See Gimix*, 699 F.2d at 907. LCP has not proffered any consumer survey evidence.

Finally, LCP argues that CHW intentionally copied LCP's mark in order to confuse consumers, which supports an inference that CHW knew the mark had secondary meaning. *See Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 611

(7th Cir. 1986). This argument requires evidence of CHW's intent. *Id.* LCP's proferred evidence that CHW intended to copy its mark is an alleged statement by a CHW representative to an LCP representative that "CHW was free to use DELAFIELD PEDIATRICS because Dr. Kamsler was no longer operating his clinic using DELAFIELD PEDIATRICS." ECF # 89 at 9; ECF # 33, ¶ 10. This statement does not in any way suggest that CHW copied LCP's mark in order to confuse consumers. If anything, it suggests that CHW began using the mark since it understood that the mark was no longer in use by another party and thus was *not* likely to confuse consumers.

To summarize: LCP is the nonmoving party with respect to CHW's motion for summary judgment. It is LCP's burden at trial to establish that it has a protectable trademark right in the phrase "Delafield Pediatrics." *Platinum Home*, 149 F.3d at 727. When the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.,* 477 U.S. at 324. LCP has presented the following evidence in support of its argument that the phrase "Delafield Pediatrics" had secondary meaning at the time CHW entered the Delafield market in 2014: (1) Dr. Kamsler's use of the name in advertising, on letterhead, on signage outside his building, and so on, until he sold the business to LCP in 2010; (2) LCP's 2010 advertising announcing that it had purchased the Delafield Pediatrics clinic; (3) LCP's use of the phrase "Delafield Pediatrics" in print and online advertising beginning in 2017; (4) Dr. Moyer's assertion that the phrase "Delafield Pediatrics" when employees answered the phone; (5) an undisputed but undeveloped claim that the phrase was used in word of mouth advertising; (6) declarations of an unrepresentative portion of LCP's client base who had formed their impression of the phrase "Delafield Pediatrics" when the phrase was being used by Dr.

11

Kamsler as the name of the business; and (7) an unsubstantiated allegation that CHW copied the name in order to confuse customers. This is not sufficient evidence for a trier of fact to find that the phrase "Delafield Pediatrics" had secondary meaning in the collective consciousness of the community in 2014. CHW is therefore entitled to summary judgment on the narrow question of secondary meaning.

Because LCP does not have protectable trademark rights in the phrase "Delafield Pediatrics," I need not consider whether CHW's use of the phrase constituted infringement. This resolves the case.

## IV. MOTIONS TO RESTRICT DOCUMENTS

The parties have also filed several motions to restrict various documents filed in connection with this lawsuit. Ordinarily, those records that influence or underpin a judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona-fide long term confidentiality. *Baxter Intern., Inc. v. Abbott Laboratories*, 297 F.3d 544, 545 (7th Cir. 2002). In reaching the present decision, I did not rely on any of the materials identified by the parties in their motions to restrict. Therefore, the materials are not subject to the presumption of public access, and I will grant the parties' motions.

## V. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the parties' several motions to restrict documents to case participants (ECF # 87, 123, 131, 132) are **GRANTED**.

**IT IS FURTHER ORDERED** that defendant's renewed motion for summary judgment (ECF # 88) is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (ECF # 122) is **GRANTED**. The Clerk of Court shall enter judgment accordingly.

**SO ORDERED** at Milwaukee, Wisconsin, this 22nd day of October, 2019.

s/Lynn Adelman
LYNN ADELMAN
District Judge